IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**MONICA G. CLARK**, fka **MONICA G. CARILLO**,

        Plaintiff,

v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

        Defendant.

No. 3:10-cv-06425-ST

**FINDINGS AND RECOMMENDATION**

STEWART, Magistrate Judge:

    Plaintiff, Monica Clark ("Clark"), seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB")

1 - FINDINGS AND RECOMMENDATION

under Title II of the Social Security Act ("Act"). This court has jurisdiction under 42 USC § 405(g). For the following reasons, the Commissioner's decision should be reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in 1954, Clark alleges disability since October 31, 1997, due to systemic lupus erythematosus ("lupus"), arthritis, fibromyalgia, osteoporosis, Grave's disease, hearing loss, and a broken right femur. Tr. 108, 11, 143.[1] She reports a high school education and past employment as an office assistant, police officer, and "logistics coordinator." Tr. 144, 152.

After the Commissioner denied Clark's applications initially and upon reconsideration (Tr. 45-51, 55-60), an Administrative Law Judge ("ALJ") held a hearing on March 23, 2010. Tr. 23-44. On April 19, 2010, the ALJ found Clark not disabled at any time from October 31, 1997, the alleged onset date, through December 31, 2002, the date last insured. Tr. 10-17. The Appeals Council denied review on October 22, 2010. Tr. 1-3. The Appeals Council decision is a final decision of the Commissioner, subject to review by this court. 20 CFR § 410.670a.

## BACKGROUND

**I.     Medical Record**

Handwritten and unsigned clinic notes show that Terry Warsaw, M.D., treated Clark between October 2, 1995, and January 7, 2008. Tr. 232-58, 478-509, 512-37. He diagnosed "SLE" (lupus), degenerative joint disease, and irritable bowel syndrome, as well as perimenopausal symptoms, irregular periods, arthritis, high cholesterol, and menorrhagia. *Id.*

---

[1] Citations to "Tr." refer to indicated pages in the official transcript of the Administrative Record filed with the Commissioner's Answer on May 9, 2011 (docket # 12).

After suffering a 1997 work-related injury to her left knee, Clark was treated by Gary M. Losse, M.D., who performed an arthroscopy with joint debridement in 1989. Tr. 213. Due to increasing knee pain, an x-ray was taken on July 24, 2000, which showed degenerative changes of the left knee. Tr. 231. Dr. Losse performed another arthroscopic surgery with joint debridement and a chondroplasty on Clark's left knee on August 15, 2000. Tr. 228-30. He then placed Clark on temporary total disability status on September 13, 2000. Tr. 209.

On May 1, 2002, due to Clark's complaints of worsening symptoms, a rheumatologist, Ken D. Pischel, M.D., Ph.D., examined her and diagnosed lupus, possible fibromyalgia, and hypothyroidism. Tr. 259-61.

On October 6, 2005, Clark underwent a left knee total arthroplasty. Tr. 322.

Jim C. Kim, M.D., followed Clark between June 10, 2003, and September 18, 2007. Tr. 270-75, 341-55. He continued to assess lupus based upon laboratory studies and noted Clark's report of moderate pain on May 9, 2006. Tr. 275. Andrew I. Spitzer, M.D., treated Clark's knee impairment between June 15, 2006, and July 26, 2007. Tr. 460-76.

Todd Shapiro, M.D., admitted Clark to the hospital on July 17, 2006, for surgical repair of a hip fracture that occurred when she tripped over her dog. Tr. 590. Bradford A. Anderson, M.D., subsequently followed Clark for rehabilitation and also noted her lupus and related polyarthritis. Tr. 386-87. On October 4, 2006, Dr. Kim stated that Clark had osteoporosis based upon bone density studies. Tr. 273. Clark received a right knee total arthroscopy in February 2007. Tr. 397-406. On April 6, 2007, Dr. Kim again noted lupus and stated that Clark suffers from a hearing loss. Tr. 272.

3 - FINDINGS AND RECOMMENDATION

Dr. Shapiro submitted a report to Clark's worker's compensation carrier regarding Clark's right hip fracture on May 25, 2007, stating that Clark ambulated with a cane, reported pain, and "is not getting significantly better." Tr. 722-23.

Dr. Kim described Clark's "complicated problems with the right hip" on June 22, 2007, and on September 18, 2007, noted that Clark had bilateral knee replacements. Tr. 270. On June 26, 2007, Dr. Spitzer noted that Clark's right knee was healing after arthroscopy and patellectomy surgeries. Tr. 725.

After Clark moved to Eugene, Oregon, Robert S. P. Fan, M.D., treated Clark's hip pain on January 21, 2008. Tr. 578-81. Anita J. Dekker, M.D., Ph.D., treated Clark at a pain management clinic between February 7 and November 7, 2008. Tr. 281-318, 611-667. On September 21, 2009, Christopher J. Nanson, M.D., treated Clark's right hip pain and noted "severity level is moderate" and "the problem is worsening" and "occurs constantly." Tr. 729. Dr. Nanson attributed this pain to Clark's right hip implant and pain from underlying arthritis. Tr. 732. The last entry in the medical record indicates that right hip replacement surgery was scheduled for Clark in February 2010. Tr. 751.

## II.     Clark's Testimony

### A.     Clark's Written Testimony

#### 1.     Function Report

Clark submitted a "Function Report" dated June 14, 2008. Tr. 162-69. She wrote that she lives in a travel trailer with her boyfriend. Tr. 162. She gets up about 8:00 am, but has difficulty due to pain at a level "about 9-10" and muscle spasms in her arms and hands. *Id*. She takes her medication, eats breakfast, showers, dresses, and then goes to medical appointments

and performs exercises prescribed by her pain clinic. *Id.* Around noon she takes more medication and rests. *Id.* She cares for her dogs with her boyfriend's help. Tr. 163. She wakes up in the night because she cannot find a comfortable position and usually has someone close by while bathing. *Id.*

Regarding household chores, Clark can cook for ten minutes, and no longer cooks full meals. Tr. 164. She does some vacuuming and laundry, but these tasks require rest and are performed over several days. *Id.* She requires help to finish these tasks at times, and needs help carrying laundry. *Id.* Clark does not drive often and shops for food once a week for a half hour. Tr. 165. She must "go over" money matters many times to make sure she handles money correctly. Tr. 166. Her hobbies include "some reading." *Id.* Clark also wrote, "I can't stand it any more I hurt too much," though she did not specify what activities this limitation addressed. *Id.* She does not go out, except to attend medical appointments. Tr. 166-67.

Clark endorsed limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing, as well as in hearing, memory, completing tasks, concentration, understanding, following instructions, and using her hands. Tr. 167. She cannot lift over five pounds, and cannot squat or bend due to her knee impairments. *Id.* She also has lost hearing in her left ear and has "loud ringing" in both ears and, consequently, does not "understand things as much." *Id.* She can pay attention for ten minutes, must re-read written instructions, and will ask for clarification if she does not understand spoken instructions. *Id.*

Finally, Clark wrote that she does not handle stress or changes in her routine very well, and has used a cane and glasses since July 2006. Tr. 168.

///

5 - FINDINGS AND RECOMMENDATION

### 2. Fatigue Questionnaire

Clark also completed a "Fatigue Questionnaire" with detailed responses on June 16, 2008. Tr. 170-73. She wrote that she first experienced fatigue in 1996 and must rest after about two hours throughout her activities of daily living. Tr. 170. She can no longer garden because she cannot kneel or carry items, cannot walk her dogs if they pull on the leash, and does not drive. *Id.* She walks about a half mile or ten minutes daily and cannot carry much because her cane gets in the way. Tr. 171. Her daily activities include taking pain medication, caring for her dogs, resting, going to medical appointments, and doing prescribed exercises. Tr. 172. Clark indicated that she cannot walk, stand, sit without needing to rest and cannot bend, lift, or reach. *Id.*

### 3. Pain Questionnaire

Finally, Clark completed a pain questionnaire on June 14, 2008. Tr. 174-76. She stated that she is in continuous pain which gets worse by sitting too long, "carrying anything," and "standing in one spot." Tr. 174. Her pain is relieved by changing position "sometimes," stretching, pain medication, a heating pad, or lying down. *Id.* She can be active two to three hours before requiring rest and can no longer walk, garden, perform computer research, or play with her dogs. Tr. 175.

### B. Clark's Hearing Testimony

At the March 23, 2010, hearing before the ALJ, Clark testified that she stopped working in 1997 because she was bedridden and her pain medication was causing her to vomit. Tr. 30. She attempted to work at a business she owned with her boyfriend from 1997 to 2005 and

"helped sometimes by answering the phone" one to two hours a week when either sitting or lying down. Tr. 31-32. Her condition worsened during this time period. Tr. 32.

Clark described her bilateral knee replacement surgeries in 2005 and 2006, and stated that she had her right hip replaced February 23, 2010. Tr. 35. She has used a cane since 2005. Tr. 36. She also testified that she has neck pain, and joint swelling in her knuckles, knees, and "all my joints." Tr. 37.

Regarding the relevant period between 1997 and 2002, Clark stated that she could "maybe" lift five pounds and do no basic daily activities other than attend doctor appointments. Tr. 38. She could not read or watch television because "my eyes didn't focus very well and I was so sick to my stomach a good deal of the time." Tr. 39. At this time she was taking anti-inflammatory and pain medications, which had various side effects, including constipation, eye problems, and dizziness. Tr. 40. Clark testified that she was lying down 23 or 24 hours per day during this period. Tr. 41.

### III.   Third-Party Testimony

On June 14, 2008, Clark's then-boyfriend, Daniel Clark, submitted a third-party report. Tr. 154-61. He wrote that Clark has "very difficult" mornings and that it takes her an hour and a half to feel "better" in the morning. Tr. 154. She makes breakfast and showers, takes pain medication, and rests. *Id.* Clark tries to walk throughout the day for about ten minutes at a time. *Id.* She feeds, brushes, and plays with her dogs. Tr. 155. Daniel Clark wrote that Clark can shower, but cannot take a bath, and sometimes needs help getting up and down from the toilet. *Id.* She needs verbal reminders to take her medication and can prepare daily meals in about 15 or 20 minutes, but must "sit down a lot" in doing so. Tr. 156.

Clark can do some cleaning and laundry with breaks in 15 or 20 minute increments. *Id.* She requires help moving things when vacuuming, and needs someone to watch her so that she does not fall down. *Id.* Clark can no longer do yard work or stand "that long." Tr. 157. Daniel Clark indicated that Clark can handle money and pay her bills, but has difficulty managing a checking account because her attention span is short and she gets very tired due to pain and medications. Tr. 157-58.

Finally, Daniel Clark stated that Clark "doesn't want to go out and do things" and has limitations in lifting, walking, stair climbing, squatting, sitting, bending, kneeling, standing, reaching, and using her hands. Tr. 159. She also has limitations in talking, hearing, understanding, following instructions, completing tasks, getting along with others, concentrating, and in memory. *Id.* She "should not lift anything," and "other physical things are limited." *Id.* Clark uses a cane daily "most of the time." Tr. 160.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 CFR § 404.1520; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 CFR § 404.1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 CFR §§ 404.1509, 404.1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § 404.1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 CFR § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work, or that the claimant has no past relevant work, the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR §§ 404.1520(a)(4)(v), 405.1520(f). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 CFR § 404.1520(g).

9 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS[2]

At step two, the ALJ found that Clark suffered the severe impairments of "status post left knee surgery with residual chronic pain," chronic low back pain with bilateral leg pain, and osteoarthritis. Tr. 12. At step three, the ALJ found that these impairments did not meet or equal a "listed" disorder and that Clark retained the RFC to perform a full range of sedentary work. Tr. 15. The ALJ explained:

> Sedentary work is defined as one which involves performance primarily in a seated position. Strength demands include having the ability to lift and/or carry no more than 10 pounds at a time, being seated approximately 6 hours of an 8 hour work day, and walking or standing no more than 2 hours of an 8 hour workday. Good use of ones' [sic] hand and fingers for repetitive hand-finger actions as well as precision use of fingers for fine manipulation are also required. *Id.*

Relying upon a vocational expert's testimony, the ALJ found that this RFC allowed Clark to perform her past relevant work at step four. Tr. 17. Thus, the ALJ found Clark not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F3d 1219, 1222 (9th Cir 2009),

---

[2] For unknown reasons, the ALJ cited 5th Circuit authorities throughout his decision. Tr. 12, 15.

quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*; *see also Batson*, 359 F3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F3d at 1225-26, citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947).

## FINDINGS

Clark challenges the ALJ's findings regarding her credibility and his omission of the lay witness's testimony.

**I.      Clark's Credibility**

**A.      Legal Standards**

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence, and other evidence." 20 CFR § 404.1529(a). In the Ninth Circuit, once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F3d at 1036, citing *Smolen v. Chater*, 80 F3d 1273, 1281 (9th Cir 1996).

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F3d 748, 750 (9th Cir 1995), citing *Bunnell v. Sullivan*, 947 F2d 341, 345-46 (9th Cir 1991) (*en banc*). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F3d at 883; *see also Bunnell*, 947 F2d at 346-47.

B.  **Analysis**

The ALJ findings pertaining to his RFC analysis recite Clark's testimony in considerable detail. Tr. 16-17. The ALJ first noted that Clark testified that at her March 23, 2010 hearing that her symptoms worsened in 1997 and rendered her bedridden. Tr. 16. The ALJ also recited Clark's descriptions of joint pain, including her attempts to relieve her symptoms with anti-inflammatory medications, which Clark reported were not effective. *Id.* The ALJ found this portion of Clark's testimony "contrary to the voluminous follow up records reviewed above from her treating physician during the same time period at issue." *Id.*

The ALJ then recited Clark's description of her limitations, including that she could not lift more than five pounds and "had no basic activities," but made no finding regarding these limitations. *Id.* Finally, the ALJ recited Clark's description of her limited activities of daily

living. Tr. 16-17. Here the ALJ noted that Clark testified that between 1997 and 2002 she had to lay down daily due to pain, joint swelling, stomach upset due to medications, and side effects stemming from other medications, including narcotics. Tr. 17.

The ALJ's synopsis accurately summarizes the record. However, the ALJ provided no further analysis, other than to conclude that Clark's:

> medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above determined residual functional capacity assessment.

Tr. 17.

Such an analysis is insufficient. Once a claimant establishes an impairment, as did Clark. the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter*, 504 F3d at 1036. Other than generally noting contrary medical records by the treating physician, the ALJ made no other findings regarding Clark's testimony, leaving this court with nothing further to review.

The Commissioner asserts that the treatment notes cited by the ALJ contain numerous examples of Clark's activities and contradictory statements, and cites Ninth Circuit holdings allowing the ALJ to reject a claimant's testimony for such reasons. The Commissioner concludes, without citation, that Clark's complaints of total disability, including her report of being bedridden, are not supported by the medical record which is a clear and convincing reason for rejecting her complaints.

The Commissioner's analysis is flawed. First, as noted, it is well established in the Ninth Circuit that once a claimant establishes an impairment, she need not show that the degree of her

13 - FINDINGS AND RECOMMENDATION

reported limitation is reflected in the medical record. *Lingenfelter*, 504 F3d at 1036; *see also Smolen*, 80 F3d at 1282; *Bunnell*, 947 F2d at 345. Further, the medical record alone may not constitute a "clear and convincing" reason for rejecting a claimant's report of her limitations. *Robbins*, 466 F3d at 883; *see also Bunnell*, 947 F2d at 346-47. The Commissioner's repeated assertion that the medical record did not corroborate Clark's symptom reporting is not based upon the applicable legal standards and should be rejected.

The Commissioner also points to instances in the medical record to support a finding that Clark is not credible. Specifically, he asserts that Clark did not report symptoms or limitations to her medical providers. However, the ALJ did not make such a finding in his truncated credibility analysis. The Commissioner's submission ignores the Ninth Circuit's clear directive that this court may rely upon reasonably inferences drawn by an ALJ, *Batson*, 359 F3d at 1193, but may not rely upon reasoning or findings the ALJ did not make. *Bray*, 554 F3d at 1225-26 (citation omitted); *see also Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003) (same); *Bunnell*, 947 F3d at 346-47 (holding that "a reviewing court should not be forced to speculate as to the grounds for an adjudicators rejection of a claimant's allegations of disabling pain"). Because the ALJ provided a limited or non-existent analysis, this court cannot find an inference to affirm. The court declines the Commissioner's invitation to construe further findings not made by the ALJ.

In summary, the ALJ's narrative relied only upon Clark's medical record in finding her not credible. This reasoning alone is an insufficient basis for rejecting a claimant's symptom testimony. The ALJ's credibility findings, therefore, should not be affirmed.

///

///

14 - FINDINGS AND RECOMMENDATION

## II.  Lay Witness Testimony

Clark asserts that the ALJ erroneously omitted testimony submitted by her then-boyfriend, Daniel Clark.  The ALJ did not mention or discuss Daniel Clark's testimony.  The Commissioner asserts that his testimony is neither significant nor probative because he completed the form more than five years after Clark's date last insured.

### A.  Legal Standards

The ALJ has a duty to consider lay witness testimony.  20 CFR §§ 404.1513(d), 404.1545(a)(3); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir 2009).  Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F3d 915, 918-19 (9th Cir 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting his testimony.  *Nguyen v. Chater*, 100 F3d 1462, 1467 (9th Cir 1996).

### B.  Analysis

This court may not affirm silent omission of lay witness testimony unless it can confidently conclude that no reasonable ALJ, when fully crediting the omitted testimony, would reach a different disability conclusion.  *Stout v. Comm'r*, 454 F3d 1050, 1055-56 (9th Cir 2006).

The ALJ found that Clark could perform sedentary work.  Tr. 15.  The Commissioner's regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

15 - FINDINGS AND RECOMMENDATION

20 CFR § 404.1567(a).

To the contrary, Daniel Clark wrote that Clark "should not lift anything" and can only walk ten minutes before requiring rest. Tr. 159. He also indicated that Clark is limited in sitting and standing. *Id*. In such circumstances, this court cannot "confidently conclude" under the *Stout* standard that fully crediting Daniel Clark's omitted testimony would result in the same disability determination as made by the ALJ. Thus, the ALJ's omission of his testimony is erroneous.

The Commissioner asserts that omission of Daniel Clark's testimony is harmless because he completed the form on June 17, 2008, and Clark must show that she was disabled before her date last insured of December 31, 2002. Clark responds that Daniel Clark has known her for a period encompassing these relevant dates and that the Commissioner did not ask Daniel Clark to explain the dates of his observed limitations.

Clark's argument is persuasive. Clark bears the burden of establishing disability, *Tackett*, 180 F3d at 1098. However, the Commissioner must assist the claimant in developing the record when the record is ambiguous. *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). The Commissioner's assignment of fault regarding Daniel Clark's failure to indicate dates relating to technical determinations of disability, when the Commissioner's form made no such prompting and Daniel Clark likely had no awareness of the relevance of such dates, is contrary to the Commissioner's duty regarding ambiguous evidence. For this reason, the Commissioner's submission regarding Daniel Clark's testimony should not be sustained.

In sum, the ALJ erred by failing to provide germane reasons for rejecting the lay testimony of Daniel Clark and that omission is not harmless.

**III.    Remand**

The ALJ erroneously evaluated Clark's testimony and the lay witness testimony. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert denied*, 531 US1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F3d 1135, 1138-39 (9th Cir 2011), quoting *Benecke v. Barnhart*, 379 F3d 587, 593 (9th Cir 2004). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett*, 340 F3d at 876, citing *Bunnell*, 947 F2d at 348. The reviewing court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F3d 1032, 1035 (9th Cir 2010).

The ALJ erred by failing to properly address Clark's testimony and by omitting the lay witness testimony. The ALJ's subsequent RFC assessment and hypothetical questions to the

17 - FINDINGS AND RECOMMENDATION

vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

However, it is not clear from the record that crediting the omitted evidence establishes that Clark is disabled at step five in the sequential proceedings.  Neither the ALJ nor Clark's counsel asked the vocational expert to consider the effect of Clark's alleged limitations, as described by Clark or Daniel Clark, upon her ability to perform work in the national economy at step five in the sequential proceedings.  Tr. 42-43.  This court therefore has no evidence to credit in a finding of disability.

In such instances, an award of benefits is inappropriate.  *Harman*, 211 F3d at 1180; *see also Luna*, 623 F3d at 1035.  The matter must be remanded for further proceedings to properly address both Clark's and Daniel Clark's testimony.  If necessary, the ALJ must then revise his RFC determination.  Finally, the ALJ must make adequate step four and five findings incorporating any revised RFC determination.

## RECOMMENDATION

For these reasons, the Commissioner's final decision should be REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for further proceedings consistent with this Findings and Recommendation.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 31, 2011.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

Dated this 12th day of October, 2011.

s/ Janice M. Stewart_____<br>
Janice M. Stewart<br>
United States Magistrate Judge